The court replied:

"So that, unless the other side consents, I can hardly think it is a mistrial. I do not think it will affect, as it certainly ought not to affect, the result. It was designed merely to caution the jury specially,—to give a reason for doing it, and for taking the very unusual course of keeping them together at that stage of the case,—that I stated to them what was within the knowledge of one of these jurors at the time, or at least one of the jurors."

An exception was then taken to the refusal of the court to grant the motion.

We do not think this episode presents matter constituting legal error. There was no effort on the part of the court to coerce the jury to render a verdict. It seems to us that the justice presiding in a very extraordinary emergency acted with judgment and discretion. When the affidavit to which he referred was presented to him in the course of the trial by a juror impaneled in the case, it was for him either to ignore it or to take some notice of it. What the court said could certainly have no influence upon the mind of the juror who made the affidavit. All the court did was to notify the jury that it had become authoritatively informed that sinister influences were at work to corrupt some of their number, and that therefore the unusual course was pursued of keeping them together until the case could be finally submitted to them. The situation was one that called for the exercise of sound judgment as to the course to be pursued, and when the jury reassembled after the recess the court very clearly instructed them that their deliberate consideration of the case was not to be affected by the communication he had made. It was intended as a warning, and not as coercion, and could not have affected the honest judgment of honest jurors; and we think the justice was right in denying the motion to discharge the jury and withdraw the case, for, had he done so, the object of the person tampering with the jury would have been fully accomplished.

The judgment and order should be affirmed. All concur.

---

(65 App. Div. 265.)

PEOPLE ex rel. GOLDEY v. MAXWELL, City Superintendent of Schools.

(Supreme Court, Appellate Division, First Department. November 8, 1901.)

SCHOOL TEACHERS—ELIGIBLE LIST.

> Charter of New York (Laws 1897, c. 378) § 1081, provides that the city superintendent of schools shall make a list of all persons eligible to appointment as principals of the public schools, and that the list shall contain the names of those licensed before the charter took effect as well as the names of those licensed by the board of examiners. *Held*, that the list made up for the school board must include the names of those licensed prior to the time the charter took effect.
>
> Ingraham, J., dissenting.

Appeal from special term, New York county.

Application by the people, on the relation of William J. Goldey, for writ of mandamus against William H. Maxwell, city superin-

tendent of schools. From an order granting the writ, defendant appeals. Affirmed.

The following is the opinion of BISCHOFF, J., delivered at special term:

Pursuant to section 1103 of the charter of the city of New York (Laws 1897, c. 378), appointments of principals of the public schools must be made by the school boards of the several boroughs upon nominations previously made by the board of school superintendents for the particular borough, and from a list of eligible persons transmitted to such school boards by the city superintendent of public schools. The relator, predicating his right to have his name appear upon such eligible list from the fact that a license as principal was duly issued to him in 1875, in accordance with the law as it was then in force, seeks by mandamus to compel the city superintendent to add his name to such eligible list. The application is opposed upon the ground that section 1081 of the charter of the city of New York provides for the making of two separate lists,—one under the direction of the board of examiners of persons licensed by it after due examination, and the other by the city superintendent of all persons licensed prior to the chapters of the charter involved taking effect, and of all persons thereby expressly exempted from examination. It appears that in accordance with his construction of section 1081 of the charter the city superintendent has regularly prepared the latter list, classified into the grades prescribed by the by-laws of the board of education, and the relator's name appears thereon in its proper place; but the former list—that is to say, the list prepared under the direction of the board of examiners—respondent argues is the only list transmitted by the city superintendent to the school boards for the purposes of nominations by the board of superintendents of the various boroughs and appointments therefrom by the school boards. Obviously, the attitude assumed by the city superintendent is untenable, since thereby the persons named in the list prepared under the direction of the board of examiners would be ineligible for nomination and appointment to educational positions, such appointments being by the express language of section 1103 of the charter limited to the persons named in the list to be prepared by the city superintendent of public schools. It would seem, therefore, that the city superintendent has misapprehended the scope of section 1081 of the charter. Upon careful scrutiny of this provision it will be apparent that the scheme thereof is to provide for a list of persons eligible to appointment, the test of eligibility being the fact that the person named has received a license authorizing him to enter upon the duties of the position for which he has been nominated. It is clear, too, that the section under review provides for but one original list, and prescribes how it shall be made up and transmitted to the different school boards for the use thereof. The functions of the examining board are limited to the examination and certification of candidates for licenses, and its duty ends with the preparation of the eligible list of all submitting to such examiners for examination and license. On the other hand, the city superintendent is required by express provision to keep a list of already licensed persons, to which, within the plain intendment of the statute, it is clear the list of licensed persons from time to time provided by the board of examiners should be added, to the end that there may be one complete list at all times in the city superintendent's office of duly-licensed persons qualified for the various positions open to appointment. This eligible list, made up, as I read the statute, of all qualified persons, the city superintendent is required to divide into special lists to be transmitted to and for the use of the several school boards and superintendents of the various boroughs, each special list apparently to name only the persons eligible to appointment by the particular school board to which such special list is sent. The relator's name has been omitted from the special list transmitted to the school board for the boroughs of Manhattan and the Bronx by which he might be appointed as principal, if nominated thereto by the board of superintendents of these boroughs, which is conceded, and, consistently with the views expressed as to

the intendment of section 1081 of the charter, the mandamus applied for should issue. This is particularly true for the reason that to construe the provisions as contended for by the city superintendent would necessarily make various provisions thereof inconsistent with each other, while the view indicated gives effect to all of the provisions thereof, and is clearly within the intention of the legislature.

The writ applied for is directed to issue, but without costs, as agreed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

William B. Crowell, for appellant.

Lewis L. Delafield, for respondent.

PER CURIAM. Order affirmed, with costs, on opinion of court below.

INGRAHAM, J., dissents.

---

(65 App. Div. 257.)

BANK OF METROPOLIS v. JARVIS et al.

(Supreme Court, Appellate Division, First Department. November 8, 1901.)

EXTENSION OF NOTE—ASSIGNMENT OF COLLATERAL—CONSIDERATION.

A maker of a note applied to the bank for an extension, which it agreed to grant if he would furnish additional collaterals. The maker offered as security railroad bonds held as collateral by another bank, but subject to an attachment and to an injunction in supplementary proceedings. The maker inclosed an order on the bank having the collateral, to hold for the bank, which was the owner of his note, his equity in such collaterals, stating that the attachment and injunction order had been taken care of, and that the bank holding the note should have whatever equity he had over and above the attachment, without any obligation to extend the notes, but, if the attachment was removed within a week, then the notes to be extended as asked. Thereafter the maker assigned to third parties such collaterals, and informed the holder of the note that there was no indebtedness against the collaterals, whereupon the note was extended. The injunction was vacated, and the attachment dissolved. *Held*, that the bank owning the note was a holder for value of the maker's interest in the collaterals, though it could have brought suit on the overdue notes at any time between the date of the letter inclosing the order to the bank having the collaterals to hold the equity for the bank holding the note and the date when the attachment was withdrawn.

Appeal from judgment on report of referee.

Action by the Bank of the Metropolis against George T. Jarvis, receiver of the Louisville, Evansville & St. Louis Consolidated Railroad Company, and others. Judgment for plaintiff, and defendant Jarvis appeals. Affirmed.

The following is the opinion of HAMILTON ODELL, Referee:

This is a controversy between the plaintiff and the defendant George T. Jarvis, as receiver, over a fund of $15,000, the proceeds of $100,000 of second mortgage bonds of the Peoria, Decatur & Evansville Railroad Company. Both parties claim through or under the defendant David J. Mackey, the former owner of the bonds. The facts on which the plaintiff's claim is founded are as follows: On November 11, 1893, the said Mackey was indebted to the plaintiff as maker of two promissory notes,—one for the sum